**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANTHONY RITCHIE,    ) | |
|       Plaintiff    ) | |
| ) | C.A. No. 03-19 Erie |
| v.    ) | |
| ) | **District Judge McLaughlin** |
| STEVEN DELUCA, et al.,    ) | **Magistrate Judge Baxter** |
|       Defendants.    ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that Defendants' motion for summary judgment [Document # 26] be granted.

**II.    REPORT**

    **A.    Relevant Procedural History**

On January 31, 2003, Plaintiff Anthony Ritchie, a former inmate at the State Correctional Institution at Camp Hill, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, against Defendants, Erie Police Officers Steven DeLuca ("DeLuca"), Glenn Rogers ("Rogers"), and Marc Nelson ("Nelson").[1] Plaintiff alleges that Defendants used excessive force against him during and after his arrest on May 1, 2002. In particular, Plaintiff claims that Defendants went to Plaintiff's residence and presented him with a warrant for his arrest, at which time he was pulled from his house and pinned against the wall. (See Complaint, Section IV.C). Plaintiff alleges that, after he asked to see the warrant, Defendants pushed him down a set of steps and "slammed" him to the ground, handcuffed him, punched and kicked him in the face and stomach, and sprayed him with mace. According to Plaintiff, Defendants later punched

---

[1] The record indicates that Plaintiff was released from prison on November 21, 2003. (See Plaintiff's deposition transcript attached as Exhibit D to Document # 28, Defendants' Appendix, at p. 7).

him on the way into the police station and delayed obtaining medical treatment for him for over seventeen hours. (See Complaint, Section IV.C). As a result of Defendants' actions, Plaintiff claims that he is "still physically and mentally having problems;" however, he has failed to specify the nature of such "problems," other than an allegation that he has had nightmares. (See Complaint, Section IV.C).

On September 30, 2003, Defendants filed a motion to dismiss Plaintiff's complaint [Document # 12], arguing that Plaintiff is precluded from pursuing a civil rights claim based on excessive use of force because he was convicted of aggravated assault and escape. This motion was denied by Memorandum Order of District Judge Sean J. McLaughlin, dated June 22, 2004, which adopted this Court's Report and Recommendation that Defendants' motion be denied based on the Third Circuit Court's opinion in Nelson v. Jashurek, 109 F.3d 142, 145-46 (3d Cir. 1997)(holding that a conviction for resisting arrest did not preclude a suit for civil damages predicated on a claim of excessive force).

After conducting discovery, Defendants have now moved for summary judgment, arguing that Plaintiff has failed to state a claim and that they are entitled to qualified immunity. Despite being given ample opportunity to do so, Plaintiff has failed to file any response in opposition to Defendants' pending motion. This matter is now ripe for consideration.

### B. Relevant Factual History

The incident in question was recounted by Defendant Nelson in his police report, dated May 1, 2002, as follows:

> On 5-1-02 at approx. 1812 hrs., ... [Plaintiff] answered the door [to his apartment],... [Officer Rogers] said 'Tony Ritchie, we have a warrant for your arrest, step outside, and we'll place you in custody.' At this time [Plaintiff] stepped outside, was placed against the house....
>
> At this time [Plaintiff] began to flee, pull away from both officers, Rogers and Nelson, and began to flee southbound down the stairs to the ground level area.... Officer Nelson had a hold of [Plaintiff's] left coat area and began to pull him back towards him and doing so, swung the [Plaintiff] 180 degree turn into officer DeLuca, who was also attempting to apprehend the [Plaintiff].... Officer DeLuca tackled [Plaintiff] to the ground, advised [Plaintiff] to put his hands behind his back and once again that he was under arrest.... [Plaintiff] began to struggle immensely

>by not putting his hands behind his back and attempting to fight with these officers. [Plaintiff] then grabbed officer DeLuca by the throat area and began to squeeze his throat and scratch and claw with his nails at his left cheek and ear area and also continued to have a hold of his throat area.
>
>At this time officer DeLuca, in attempt to get [Plaintiff] off of his throat area, began to punch [Plaintiff] in the face and head area, in an attempt to get [Plaintiff] to comply.... At this time [Plaintiff] continued to resist, would not put his hands behind his back.
>
>[Plaintiff] then began to reach towards officer Deluca's [expandable baton] and then [Plaintiff] grabbed a hold of officer DeLuca's gun, grabbing the butt or the handle of his gun, the grip area.... At this time officers Rogers and Nelson were unable to reach [Plaintiff's] hands or any other areas to restrain him and began to punch [Plaintiff] in the face area and in the head area and in the rib area in attempt to keep [Plaintiff] from getting to officer DeLuca's gun.... [Plaintiff] continued to resist arrest and still would not put his hands or comply in any way with these officers.
>
>At this time an unknown [black male] came out of the same apartment that [Plaintiff] came out of and began to walk toward these officers ... in a threatening manner, therefore this individual was sprayed with pepper spray by officer DeLuca in order to keep him back.... Also at this time [Plaintiff] was also sprayed with pepper spray in attempt to get him to comply and put his hands behind his back. After approx. five to seven struggle [sic] with [Plaintiff], his right hand was cuffed and his left hand was cuffed....
>
>Once in custody [Plaintiff] was stood up on his feet and was walked towards ... one of the patrol cars.... [Plaintiff] again pulled away from officer Nelson ... in attempt to flee again and run at which time he was quickly apprehended by officer Nelson ... he continued to struggle would not walk to the patrol car and had to be tackled again to the ground in order to contain him,... [Plaintiff] then was again picked up from the ground, locked in arm locks, while cuffed, by officers Nelson and DeLuca and was patted down at the rear trunk of the patrol car in attempt to make sure that [Plaintiff] had no weapons on him for the safety of these officers before he was placed in the patrol car.
>
>Found on [Plaintiff] at that time,... was a silver crack pipe that was burnt at one end, a small baggy containing suspected marijuana and a small bag containing one rock of crack cocaine.

(See police report attached as Exhibit J(a) to Document # 28, Defendants' Appendix, at pp. 4-6).

As a result of the incident in question, Plaintiff was charged with aggravated assault, resisting arrest or other law enforcement, disorderly conduct, flight to avoid apprehension, escape, possession of a controlled substance, possession of a small amount of marijuana, possession of drug paraphernalia, and false identity to law enforcement. (See Information

3

attached as Exhibit E to Document # 28, Defendants' Appendix). On September 5, 2002, the Plaintiff appeared before the Erie County Court of Common Pleas and entered a negotiated plea of guilty to aggravated assault (reduced from a first degree felony to a second degree felony), escape, and possession of a small amount of marijuana. (See plea sheet and transcript of plea hearing attached as Exhibits F and G, respectively, to Document # 28, Defendants' Appendix). Plaintiff was subsequently sentenced to be imprisoned for a term of 15 to 30 months.

### C.    Standards of Review
#### 1.    *Pro se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-521(1972), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should be done so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court must consider facts and make inferences where it is appropriate.

**2.     Motion for Summary Judgment**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim.

5

Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

### C.    Discussion
#### 1.    Excessive Use of Force

Plaintiff alleges that Defendants punched, kicked and maced him without provocation and, thus, used excessive force in violation of his constitutional rights. Defendants counter that they "indeed used force, but used reasonable force which was necessitated by Plaintiff's attempts to defeat a lawful arrest based on the existence of an outstanding warrant." (See Document # 27, Defendants' Brief, at p. 2).

In Groman v. Township of Manalapan, 47 F.3d 628 (3d Cir.1995), the Third Circuit explained the elements of an excessive force claim:

> An excessive force claim under § 1983 arising out of law enforcement conduct is based on the Fourth Amendment's protection from unreasonable seizures of the person. Graham v. Connor, 490 U.S. 386, 394-95 (1989). A cause of action exists under § 1983 when a law enforcement officer uses force so excessive that it violates the Fourth and Fourteenth Amendments to the United States Constitution. Brown v. Borough of Chambersburg, 903 F.2d 274, 277 (3d Cir.1990). Police officers are privileged to commit a battery pursuant to a lawful arrest, but the privilege is negated by the use of excessive force. Edwards v. City of Phila., 860 F.2d 568, 572 (3d Cir.1988).
>
> When a police officer uses force to effectuate an arrest that force must be reasonable. Graham, 490 U.S. at 396. The reasonableness of the officer's use of force is measured by "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. The reasonableness inquiry is objective, but should give appropriate scope to the

6

> circumstances of the police action, which are often "tense, uncertain, and rapidly evolving." <u>Id.</u> at 397.

<u>Id.</u> at 633-34.

In support of their motion, Defendants have submitted the Affidavits of Rogers and Nelson, who both have declared under oath that they "observed [Plaintiff] grabbing Officer DeLuca'a asp (expandable baton)and also his handgun" and that they "used force to cause [Plaintiff] to desist from this action, which posed an imminent danger to the lives and safety of all concerned." (See Affidavits of Rogers and Nelson attached as Exhibits I and J, respectively, to Document # 28, Defendants' Appendix). Defendants have also submitted the Affidavit of DeLuca, who verified under oath that he "suffered bodily injury from the actions of [Plaintiff], in that [he] suffered deep scratches on [his] throat, left cheek, and on [his] left ear area as a result of [Plaintiff] assaulting [him] and resisting arrest." (See Affidavit of DeLuca attached as Exhibit H to Document # 28, Defendants' Appendix). These statements are consistent with Defendant Nelson's detailed account of the incident in question, as set forth in his narrative police report of May 1, 2002.

Plaintiff has not produced any evidence or counter-affidavit to contradict Defendants' version of events. In fact, during his plea hearing on September 5, 2002, Plaintiff acknowledged that he resisted Defendants' efforts to arrest him and placed them in fear of imminent serious bodily injury:

> MR. ADAMS: Your Honor, I think - - with the court's permission. Mr. Ritchie, you would agree with me that we are going to enter our guilty plea this afternoon based upon the fact that **you acted with physical menace that caused those police officers that were arresting you on that simple assault complaint to fear the possibility of imminent serious bodily injury. You would agree with that plea.**
>
> [PLAINTIFF]: **Correct.**
>
>     \*        \*        \*
>
> MR. AGRESTI: Okay. Count four, it's also indicated you wish to plead guilty to this escape graded as a misdemeanor of the second degree, when you did on the same date, time and location unlawfully remove yourself from official detention and failed to return to official detention following temporary leave granted for a specific purpose or limited period, in that **you were told by Officer Rogers that he had a warrant and for you to step outside, and that you - - and that you resisted that and attempted to leave. Is that in fact**

**true?**

[PLAINTIFF]: **Yes.**

(See transcript of plea hearing attached as Exhibit E to Document # 28, Defendants' Appendix).

As no facts are at issue, Defendants' actions did not constitute excessive force as a matter of law. Summary judgment should be granted in this regard.

### 2. Delay in Obtaining Medical Assistance for Plaintiff

Plaintiff alleges that, after the incident in question, he was "put in a cell where [he] laid in pain, and cold, plus hungry for 17 hours before [he] was taken to Metro Hospital." (See Complaint at Section IV.C). According to the record in this case, Plaintiff's arrest occurred at approximately 6:12 p.m. (1812 hrs.) on May 1, 2002, at which time he suffered his injuries at the hands of the Defendants. The medical records supplied by Defendants indicate that the first medical treatment Plaintiff received for his injuries occurred at Metro Health Center on May 2, 2002, at 9:15 a.m. (See Metro Health Center records attached as Exhibit A to Document # 28, Defendants' Appendix). Thus, Plaintiff appears to have gone untreated for a period of 15 hours.

In the medical context, a constitutional violation under the Eighth Amendment (or in the case of a pre-trial detainee such as Plaintiff, the Due Process Clause of the Fourteenth Amendment, see Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 n.41 (3d Cir. 1987)) occurs only when state officials are deliberately indifferent to serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). The standard is two-pronged: "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the

8

face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Lanzaro, 834 F.2d at 347.

      Where, as here, Plaintiff alleges only a delay in providing medical treatment, the "objective seriousness of the deprivation should ... be measured 'by reference to the effect of the delay in treatment.'" Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995), quoting Hill v. Dekalb regional Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994). See also McCabe v. Prison Health Services, 117 F.Supp.2d 443, 452 (E.D.Pa. 1997)(noting that courts "may look to the result of [the plaintiff's] need going untreated to gauge its seriousness").

      In this case, the medical records make clear that Plaintiff suffered no adverse effects from the alleged delay in medical treatment. In fact, the records from Metro Health Center indicate that Plaintiff suffered only tenderness in his left hand and a contusion of his right orbit. X-rays revealed a "normal left wrist," "normal skull," and "normal orbits," and no visual signs of soft tissue injury were noted. Moreover, the only medical instructions prescribed to treat Plaintiff's injuries were for him to "[t]ake Aspirin, Ibuprofen, or Tylenol as needed." (See Metro Health Center records attached as Exhibit A to Document # 28, Defendants' Appendix, at pp. 4, 6 and 7). These medical records belie Plaintiff's claim that he had a serious medical need to which Defendants were deliberately indifferent. See Beyerbach, 49 F.3d at 1326 (a plaintiff "who complains that a delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed"); Hill, 40 F.3d at 1191 (finding no deliberate indifference where plaintiff "submitted no medical evidence explaining how the four-hour delay in taking [him] to the hospital detrimented [sic] or worsened his medical condition"); Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990)(where arrestee was assaulted by police officer and displayed multiple bruises to the forehead, left ribs, right flank and left shoulder, as well as abrasions to his cornea and upper back, court found "nothing in the record to suggest" that a ten-hour delay in medical treatment exacerbated these injuries "in the slightest"); Martin v. Tyson,

845 F.2d 1451, 1458 (7th Cir. 1988)(rejecting deliberate indifference claim arising from alleged delay in medical treatment based, in part, on plaintiff's failure to produce any evidence of injury caused by delay).

Although in deciding a motion for summary judgment, the Court must evaluate the evidence in the light most favorable to the non-moving party, the non-moving party must demonstrate the existence of a material fact by supplying sufficient evidence – not mere allegations – for a reasonable jury to find for the non-movant.  See Olson v. General Elec. Aerospace, 101 F.3d 947, 951 (3d Cir. 1996)(citation omitted).  Here, Plaintiff has failed to submit any evidence to rebut the medical records supplied by Defendants and, thus, is simply relying upon the allegations of his complaint to establish his claim.  This he cannot do.  As a result, summary judgment should be granted with regard to Plaintiff's deliberate indifference claim.

### III    CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion for summary judgment [Document # 26] be granted.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

S/Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief U.S. Magistrate Judge

Dated: July 19, 2005

cc:    The Honorable Sean J. McLaughlin
       United States District Judge

       all parties of record (lw)